# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| ACUITY, A MUTUAL INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | **CONSOLIDATED CASES** |
| | ) | |
| vs. | ) | |
| | ) | |
| SPECTRUM BRANDS, INC., UNITED PET | ) | |
| GROUP, INC., AQUARIUM SYSTEMS, INC. | ) | Case No. 2:15-cv-09183-JTM |
| and MARINELAND, | ) | |
| | ) | |
| Defendants. | ) | |
| JASON TOWNSEND and SECURA INSURANCE, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. 2:15-CV-09216-JTM |
| | ) | |
| AQUARIUM SYSTEMS, INC., MARINELAND, INC., | ) | |
| UNITED PET GROUP, INC. and SPECTRUM | ) | |
| BRANDS, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## AGREED ORDER ESTABLISHING
## PROTOCOL FOR ESI AND PAPER DOCUMENTS

Pursuant to the Court's Scheduling Order (Doc. No. 11), and this District's *Guidelines for Discovery of Electronically Stored Information (ESI)*, Plaintiffs and Defendants in the consolidated cases have met and conferred regarding ESI production and have agreed to the following protocols. The protocols are before the Court in the form of a proposed Order. The Court has reviewed the proposed Order and finds that the protocol set forth in the proposed Order is an effective and efficient method for discovery of ESI, including paper documents which will be electronically scanned. Accordingly, for good cause shown, IT IS HEREBY ORDERED as follows:

1

# I       DEFINITIONS

**A.**      **ESI:** Electronically stored information, regardless of the media, including scans of hard copy (i.e., paper documents).

**B.**      **Consolidated Action:** This term shall mean the consolidated action, Case No. 2:15-cv-09183-JTM, pending in the United States District Court for the District of Kansas, which includes *Acuity, a Mutual Insurance Company v. Spectrum Brands, Inc., United Pet Group, Inc., Aquarium Systems, Inc.,* Case No. 2:15-cv-09813 *and Marineland* and *Jason Townsend and Secura Insurance v. Spectrum Brands, Inc., United Pet Group, Inc., Aquarium Systems Inc. and Marineland,* Case No. 2:15-CV-09216-JTM.

**C.**      **Potentially Discoverable ESI**:   Plaintiffs' and Defendants' electronic "documents" containing or potentially containing information relating to facts at issue in the Consolidated Action, where the term "documents" is used as it is defined in Fed. R. Civ. P. 34(a).

**D.**      **Reasonably Accessible ESI**: ESI available without undue burden or cost, including active or dynamic media such as information stored on drives and servers accessible by desktops, laptops, tablets, and other computer interfaces other than PDAs, smartphones, or cells phones. Legacy data (*i.e.*, data that has been created or stored by the use of software and/or hardware that has been replaced), and data that require forensic analysis to recover are not Reasonably Accessible.

**E.**      **Search Terms**: Search Terms are words or phrases that can be used to identify potentially relevant documents. For example, "aquarium", "heater", "fire", "recall", and "defect" are potential Search Terms.

**F.**      **Searching Syntax**: Searching Syntax refers to logical combinations of Search Terms that can be used to narrow the search for potentially relevant documents. For example, "Proof of Loss", is a potential Searching Syntax.

## II. GENERAL SCOPE

**A.**      **Potentially Discoverable ESI.**

1       Unless otherwise specifically stated and agreed to the contrary, the parties agree that, pursuant to the Federal Rules of Civil Procedure, Local Rules and the Court's Scheduling Order (Doc. No. 11), only Reasonably Accessible ESI will be reviewed and produced unless a party makes a specific request for other ESI. Nothing in this proposed Order establishes any agreement as to either the temporal or subject matter scope of discovery in this Consolidated Action.

2.      Should a dispute arise among the parties in determining and agreeing upon whether a particular population of ESI or entire ESI data source is inaccessible or needs to be produced, the parties will make a good faith effort to resolve such a dispute amongst themselves before any motion is filed with the Court.

3.      Deleted Information. Absent a showing of good cause, no party need restore any deleted ESI. Where a requesting party shows good cause for restoring deleted ESI, the cost of this restoration will presumably fall on the requesting party.

**B.      Preservation of Discoverable Information.**

A party has a common law obligation to take reasonable and proportional steps to preserve discoverable information in the party's possession, custody or control. Absent a showing of good cause by the requesting party, the categories of ESI identified in Schedule A attached hereto need not be preserved.

**C.      Guidelines.**

1.      The parties have jointly agreed to collect, process and review Potentially Discoverable ESI and produce responsive ESI in accordance with the principles set forth in the Sedona Conference's 2008 Cooperation Proclamation, founded on principles of reasonableness and proportionality aimed at exhaustively but succinctly producing all responsive ESI to both parties. As part of the parties' agreement, the parties may embark on a collaborative effort to identify appropriate Search Terms and Searching Syntax, scoped to key player custodians and date range filtering corresponding to the subject matter of this Consolidated Action. Nothing herein, however, obligates a producing party to use Search Terms and Searching Syntax to identify Potentially Discoverable ESI or responsive ESI.

2.      If a party later decides other Search Terms and Searching Syntax should be crafted in order to identify additional Potentially Discoverable ESI and responsive ESI, the parties agree to a further series of meet and confer concerning that request before filing a motion with the Court.

3.      Nothing in this agreement, including any provisions related to the use or non-use of Search Terms or Search Syntax, shall excuse a party from searching for and producing documents from locations (including electronic files) it knows or reasonably believes to have responsive information.

**III. IDENTIFICATION OF RESPONSIVE ESI**

**A.      Search Terms and Syntax.** To the extent any party intends to use Search Terms and Searching Syntax as set forth generally in the proceeding section, the parties agree to identify Search Terms and Searching Syntax for ESI. The use of Search Terms and Searching Syntax, however, does not excuse a party from its

3

normal obligations under the Federal Rules of Civil Procedure to conduct its own diligent search for responsive documents and produce them.

B.   **Locations to be Searched.** The parties agree to identify the locations where Potentially Discoverable ESI is stored, such as centralized repositories and custodial files (*i.e.*, files stored on the custodian's laptop, desktop, tablet or other individually controlled computer other than PDAs, smartphones, or cells phones) and email for the custodians identified in section B.

C.   **Search Methodology.** To the extent Search Terms and Searching Syntax will be used to identify Potentially Discoverable ESI and responsive ESI for any location identified pursuant to section C above, the parties agree to specify the Search Terms and Searching Syntax to be used for each such location.

D.   **Forensic Images of Hard Drives.** The parties agree that it is not necessary to create forensic snapshot images of the custodians' laptop or desktop hard drives at this time. If a party later requests that a forensic image be created and searched in order to identify additional responsive ESI, the parties agree to meet and confer concerning that request before filing a motion with the Court. The parties also recognize, however, that there may be inadvertent changes to the computer hardware whereby forensic information is inadvertently not preserved.

E.   **Duty of Producing Party.** If a producing party becomes aware of Potentially Discoverable ESI or responsive ESI that was not extracted using the Search Terms and Searching Syntax provided for in this Protocol, the party will produce the ESI.

F.   **Additional Discovery Permitted.** The above statements are those of the respective parties regarding their own ESI, and nothing herein shall be deemed to estop or bar the non-producing party from engaging in discovery (e.g., interrogatories, depositions) to determine the types of ESI and paper documents maintained by the producing party and/or the investigations which have been performed to identify or produce responsive ESI. Likewise, the parties do not waive any rights to assert any applicable objections to such discovery, including but not limited to objections based on the scope of such discovery, the burden(s) of such discovery, the attorney-client privilege or the work-product protection, nor does any party waive the right to subsequently argue that the scope or process should be revised.

G.   **Reasonable Diligence.** The parties will use reasonable diligence to search for and retrieve Potentially Discoverable ESI, but the parties recognize that the processes and software to be utilized for compliance with this protocol are not perfect. If any issues arise regarding the methods used by either party, the parties will confer to resolve those issues that may arise relating to the manner in which the retrieval and searches are completed.

4

## IV. <u>FORM OF DOCUMENT: GENERAL PRINCIPLES</u>

A.   <u>**ESI Document Production Format.**</u> The following provisions shall generally govern the production format and procedure for responsive ESI including scanned paper documents.

1.   <u>Format.</u> All responsive ESI shall be produced electronically, in a single-page TIFF image, a standard litigation database load file format, and/or native file format, at the producing party's option. Such image file or native file format document shall not be manipulated to change how the source document would have appeared if printed out to a printer attached to a computer viewing the file. If the source of the document was originally stored and only originally existed in the form of a hard copy document, it will be produced in a single-page TIFF image.

2.   <u>Load Files.</u> The parties agree to use their best efforts to produce a load file in a format requested by the opposing party as set out in Section V. If a party later requests additional information and the other party agrees to provide such additional information, the parties will confer to determine if such information can be provided by the parties' existing in-house or outsourced e-discovery technology or available resources without undue burden or cost. The parties reserve the ability to request that native electronic documents (*e.g.*, .xls) or additional metadata fields be set forth or provided for certain specified electronic documents upon review of the other party's production. The parties reserve their respective rights to object to any such request. A party is not obligated to produce metadata from an electronic document if metadata does not exist in the document or if the metadata is not machine-extractable.

3.   <u>Paper Documents.</u> Paper documents will be scanned to imaged copies and produced in the same manner as electronic documents identified in section IV.A.2. The imaged copies of scanned paper documents will be logically unitized (i.e., to preserve page breaks between documents and otherwise allow separate documents to be identified). The producing party will produce imaged copies of scanned paper documents together with OCR text generated from the imaged copies of such scanned paper documents. To the extent a producing party provides imaged copies of scanned paper documents with OCR text generated from the imaged copies, the receiving party accepts such production "as is," and the producing party accepts no liability as to the accuracy of searches conducted upon such production.

4.   <u>Appearance.</u> Subject to bates-numbering, confidentiality legending, and appropriate redacting with requisite marking indicating such redaction has occurred, each document's electronic image shall convey the same information and image as the original document. Documents that present imaging or other technical formatting problems shall be promptly identified; the parties shall meet and confer in an attempt to correct and redeliver any affected data, in accordance with each parties' existing in-house or outsourced e-discovery technology resources.

5.    <u>Document Numbering and Designations.</u> Documents produced by Spectrum Brands, Inc. shall have a unique and distinct prefix:

      a.     AMIC shall be used  for documents produced only in *Acuity, a Mutual Insurance Company v. Spectrum Brands, Inc., United Pet Group, Inc., Aquarium Systems, Inc.,* Case No. 2:15-cv-09813

      b.     TSIC shall be used for documents produced only in *Jason Townsend and Secura Insurance v. Spectrum Brands, Inc., United Pet Group, Inc., Aquarium Systems Inc. and Marineland,* Case No. 2:15-CV-09216-JTM

6.    <u>De-duplication.</u> The parties agree to produce ESI that have been de-duplicated. ESI that are attachments to email will not be removed during any de-duplication process, and all source/attachment document family relationships shall be preserved and maintained in any litigation database production load files.

7.    <u>Retention of Original Documents.</u> To the extent possible, the producing party shall retain native ESI for all ESI produced in this proceeding in a manner so as to preserve, (i) date information regarding a document, such as "Date Modified" information; and, (ii) information regarding the location of said document, for example, the electronic folder name, commonly stored in a field entitled "EDSource" or other similarly metadata field, in which it had been stored prior to identification and production; and, (iii) all metadata fields as they inherently exist within each unique electronic document record, associated with these electronic materials as they existed at the time of production in the event review of such metadata becomes necessary. In addition to fielded metadata values, the parties shall further preserve and maintain any full-text metadata as it may exist within the original text of the document. For example, the parties shall preserve, maintain and produce versions of documents showing author comments, Track Changes comments, PowerPoint slides speakers notes or comments, and any similar electronic marginalia that may exist within the text of the document. The parties understand that the electronic document production process required in producing metadata may inadvertently alter certain fielded metadata values. Said inadvertent alteration or change to certain fielded metadata values change resulting from the electronic document production process shall be deemed permissible by both parties.

8.    <u>Requests for Additional Information.</u> If responsive ESI is produced in a format where any of the agreed upon standard metadata values are missing from the production load file, the receiving party may request that the producing party produce the missing information. The parties agree to undertake a good faith effort to investigate and identify whether any potentially missing information is missing due to inadvertent omission (i.e., human error), or whether any potentially missing information is missing due to the fact that for that

particular electronic document record, no inherent metadata existed. Should the former scenario be determined, both parties agree to re-produce it in a reasonably timely manner to the requesting party. Should the latter scenario be determined, both parties agree to accept the opposing parties' findings following said good faith investigation efforts. In the event a producing party believes the scope or number of such requests is unduly burdensome, and the parties cannot agree on an appropriate method to resolve such disputes, the Court shall resolve such disputes.

9.   <u>Decryption and Passwords.</u> To the extent that decryption or access passwords are necessary to unlock any electronic document in its native form, including without limitation electronic mail passwords and file decryption passwords, the parties shall meet and confer to develop appropriate steps to allow access to the data without compromising confidentiality, security, or proprietary interests.

**B.   <u>Variance.</u>** Any practice or procedure set forth herein may be varied by agreement of the parties, and confirmed in writing, where such variance is deemed appropriate to facilitate the timely and economical exchange of responsive ESI.

**C.   <u>Duplicate Production Not Required.</u>** A party producing a document in electronic form need not produce the same document in paper format.

**D.   <u>Entering Subsequent Order.</u>** Upon reaching agreement on all of the further issues referenced herein or, to the extent that is not possible after a full and complete meet-and-confer process, the parties shall submit to the Court a proposed Order specifying all of the further agreements mandated by this Order, or submit to the Court each party's position with respect to areas of disagreement for resolution by the Court.

## V. PRODUCTION OF ELECTRONIC DATA: ACTUAL FORM OF PRODUCTION <u>TECHNICAL SPECIFICATIONS</u>

**A.   <u>Form of Production Agreement:</u>** In accordance with Fed. R. Civ. P. 34, and relying on the parties' opportunity for sampling afforded under Fed. R. Civ. P. 34(a)(1), the parties have collaboratively developed and agreed upon the following forms of production and related required technical specifications.

**B.   <u>Form of Production:</u>**

1.   The parties shall meet-and-confer to reach an agreement concerning the form of production for any discovery document record whose source was originally electronic in nature (ESI) in the ordinary course of business. The agreement shall address at least the following issues:

a. <u>Rendering documents searchable.</u> ESI documents should be produced with a corresponding full text extracted file. Hardcopy documents should be provided with a corresponding OCR file.

b. Specifying the load file including specifying the custodian for each document, indicating the beginning and end of the document range, *i.e.* the document break, for each document, and the beginning and end of any attachment range, *i.e.* identifying an e-mail and its attachments or all documents in a file folder.

c. Specification of which documents should be produced in native format.

2. The parties will negotiate and agree upon the metadata that will be produced along with responsive ESI.

3. For paper documents that are not ESI, each party shall electronically store the document as single-page TIFF images and produce the document in accordance with the ESI procedures discussed above, including providing the load file and the specified data to render the document searchable to the extent possible. For example, it is understood that it is unfeasible to provide OCR searching for handwritten characters. However, to the extent reasonable, each party shall provide the required data to render documents searchable for all paper documents.  Alternatively, any party may produce paper documents in paper form or as a .pdf.

## VI.   COST CONTAINMENT

Consistent with the customary practices and procedures the District of Kansas, including, for example, the Guidelines for Discovery of Electronically Stored Information (ESI) at § 4(g), the procedures and protocols herein pertaining to identification of Potentially Discoverable ESI and production of responsive ESI are subject to the development of reasonable and appropriate strategies to minimize the cost and burden that may be associated with production of ESI and to the development of reasonable and appropriate cost allocation agreements. Any such cost allocation, *e.g.*, *id.* at § 4(g), agreements shall be tailored to give the parties incentives to use cost-effective means of obtaining information and disincentives to engage in wasteful and costly discovery activity.

SO ORDERED

September 23, 2015.

 s/ James P. O'Hara
United States Magistrate Judge

Submitted by:


 /s/ James R. Jarrow_____
James R. Jarrow   KS # 14287
Michael Kopit   KS# 25488
Baker Sterchi Cowden & Rice, LLC
9393 W. 110th Street, Suite 500
Overland Park, KS  66210
jarrow@bscr-law.com
mkopit@bscr-law.com
ATTORNEYS FOR PLAINTIFF ACUITY


 /s/ Mark A. Ferguson_____
Mark A. Ferguson   KS #14843
Gates, Shields & Ferguson, P.A.
10990 Quivira, Suite 200
Overland Park, KS  66210
markferguson@gsflegal.com

Cheri L. MacArthur
Cozen & O'Connor
707 17th Street, Suite 3100
Denver, CO  80202
cmacarthur@cozen.com
ADMITTED PRO HAC VICE

ATTORNEYS FOR PLAINTIFFS
JASON TOWNSEND AND SECURA INSURANCE


 /s/ Brian G. Boos_____
Brian G. Boos       KS #13714
Wallace Saunders
10111 West 87th Street
Overland Park, KS 66212
(913) 888-1000 FAX - (913) 888-1065
bboos@wallacesaunders.com
ATTORNEYS FOR DEFENDANTS

101408484 v.1

# SCHEDULE A

1.  Deleted, slack, fragmented, or other data only accessible by forensics.

2.  Random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system.

3.  On-line access data such as temporary internet files, history, cache, cookies, and the like.

4.  Data in metadata fields that are frequently updated automatically, such as last opened dates.

5.  Back-up data that are substantially duplicative of data that are more accessible elsewhere, except that any back-up of a departed employee's laptop or desktop computer made in connection with such employee's departure must be preserved.

6.  Voice messages.

7.  Instant messages that are not ordinarily printed or maintained in a server dedicated to instant messaging.

8.  Electronic mail or pin-to-pin messages sent to or from mobile devices (e.g., iPhone and Blackberry devices), provided that a copy of such mail is routinely saved elsewhere.

9.  Other electronic data stored on a mobile device, such as calendar or contact data or notes, provided that a copy of such information is routinely saved elsewhere.

10. Logs of calls made from mobile devices.

11. Server, system or network logs.

12. Electronic data stored in the ordinary course of business only on a temporary basis by laboratory, diagnostic or monitoring equipment.

13. Data remaining from systems no longer in use that is unintelligible on the systems in use.